UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-17

MARY J. MATLOCK                                                    PLAINTIFF

v.

DOUGLAS AUTOTECH CORP.                                            DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Douglas Autotech's Motion for Summary Judgment (Docket #33). Plaintiff has responded (Docket #41). Defendant has replied (Docket #49). This matter is now ripe for adjudication. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff Mary Matlock, an African American woman in her early forties, began working for Defendant Douglas Autotech Corporation in 1997 as a production associate. In 2002, Matlock began working on the Molding Line. Workers on the Molding Line are required to operate the molding machine, which molds shifter knobs, by sliding open a horizontal door, placing the shifter knob in the machine, closing the door, and activating the machine. Matlock asserts that from 2002 to 2007, she operated seven different molding machines on a regular basis, and had other jobs in the molding area as well.

Matlock filed a charge with the Equal Employment Opportunity Commission ("EEOC") in 2002. Matlock alleged in that charge that she was treated differently because of her race in regards to an injury she had suffered at work. Matlock had carpal tunnel syndrome to the point that she was told to work with only one hand, but instead she was sent back to work early,

resulting in permanent deformation of her finger.  In contrast, a white female employee had hurt her shoulder and was immediately moved to a different position that would not irritate her condition.  Matlock received a lump sum payment through a workers' compensation settlement.

Around April of 2006, Matlock began experiencing back pain, allegedly caused by her work on the Molding Line.  Matlock sought treatment for her back pain in November of 2006. In December of 2006, Matlock filed her second charge with the EEOC.  Matlock admits that the reason she filed this claim was to get some kind of treatment for her back pain, since Douglas Autotech had prevented her from seeing a Workers' Compensation doctor.  Matlock asserts that she was promised a form to fill out for Workers' Compensation, but she never received it. Matlock and Douglas Autotech settled the 2006 EEOC charge through mediation on March 13, 2007.  Douglas Autotech agreed to open a worker's compensation claim for Matlock, in return for Matlock's promise to dismiss all charges prior to the settlement, including the EEOC claim. Douglas Autotech's worker's compensation carrier eventually denied Plaintiff's claim, finding that her back injury was not work related.

Matlock complained to her supervisors that the stretching and reaching inside the machine caused her pain, and she requested a line transfer.  In early 2007, Douglas Autotech modified Matlock's work station by building a platform she could stand on in order to reach the machine more easily.  Matlock states this did not reduce her pain because she still had to reach inside the machine.  Douglas Autotech also provided Matlock with a rubber mallet to pound the shifter knobs in place, adjusted the machine door to make it easier to open and close, and moved Matlock to different work stations within the Molding Line.  Matlock asserts that none of these accommodations helped her back pain.  Open positions within Douglas Autotech were posted on

bulletin boards in the break rooms and on the company's website.  Douglas Autotech asserts that even though Matlock would have qualified for at least one-third of the jobs posted, she did not bid on a single job.  Matlock counters that she did bid on a job for the quality lab, and received an interview with Bill Doughman.  She did not receive the position, despite the fact that she had the most seniority.  Matlock believes she was not selected for the position because of her race. Although Matlock does not provide a date for this event, Douglas Autotech asserts that Doughman last worked at Douglas Autotech in April of 2005, which would have been prior to the start of Matlock's back pain in 2006.

On May 8, 2007, Matlock was suspended by Douglas Autotech for starting a verbal altercation with a fellow employee, Jason Wilkins, an African American male in his twenties. Human Resources Manager Tara Brown determined after an investigation that Matlock initiated the altercation.  As part of her investigation, Brown reviewed handwritten statements and interviewed Jason Wilkins and Joe Forbes, a witness.  Matlock also gave a statement to Brown, who transcribed it.  Matlock claims that Brown's report based on Matlock's statement was inaccurate, however, and she signed Brown's write-up only because refusing to do so may have resulted in termination.  Douglas Autotech's general policy is to send home all employees involved in altercations, without pay, pending an investigation.  The person found at fault is given suspension time based upon the length of time already missed, and altercations of a physical nature result in termination of both parties.  After Brown completed her investigation on May 8th and determined Matlock was the instigator, Matlock was sent home from work that day and given a one day suspension.  Wilkins was not disciplined.  Brown forgot to call Matlock on May 9th to tell her she could return to work. Instead, Matlock was informed on the morning of

May 10th that she could return to work that day.  Because of Brown's mistake, Matlock missed about 3.25 hours of pay on May 10th.

On June 16, 2007, Matlock filed another charge of discrimination with the EEOC.  In her charge, Matlock alleged that she was suspended due to her age, disability, and as retaliation for her 2006 EEOC charge.  Although the company believed the charge was without merit, Douglas Autotech agreed to reimburse Matlock for the lost wages associated with her May 2007 suspension.  Douglas Autotech claims that Matlock was reimbursed in the pay period of August 20, 2007.  Matlock states she was never compensated.  On October 31, 2007, the EEOC issued Matlock a Notice of Right to Sue.

Around August of 2007, Douglas Autotech begain requiring all Molding Line employees to work overtime.  Matlock told Douglas Autotech that she could not work more than forty hours per week due to a doctor's restriction, and Douglas Autotech advised her to seek medical leave under the Family and Medical Leave Act ("FMLA").  Matlock was granted medical leave, and missed one month of work between August and September of 2007.  She appeared at work intermittently between September of 2007 and February of 2008.  Matlock began working as a substitute teacher's aide with Christian County Public Schools in November of 2007.  She worked at the school on the days when she was in too much pain to work for Douglas Autotech.  Matlock did not disclose her back pain, or that she was on FMLA leave, to Christian County Public Schools, nor did she disclose to Douglas Autotech that she was working as a substitute teacher's aide.

Also in November of 2007, Matlock was transferred to the shifter line, although again this did not help with her back pain.  She was transferred to the AT line in either December of

4

2007 or January of 2008.  At this point in time, Matlock's back pain had increased to the point that it was difficult for her to stand, and Matlock believed the only job she could do was a "sit-down job."  Matlock resigned from Douglas Autotech on or about February 15, 2008.  She stated in her exit interview that she was physically unable to perform her job duties at the plant, and did make any statements that she was resigning because of any alleged acts of discrimination.

Matlock filed her complaint in the present litigation on January 28, 2008, alleging a violation of Title VII of the Civil Rights Act of 1964.  Douglas Autotech filed its answer on August 6, 2008.  On or about August 18, 2008, Matlock and Douglas Autotech entered into a settlement agreement to resolve Matlock's Worker's Compensation Claim # 08-00344.  Matlock received a lump sum payment of $7,500.00, in exchange for her agreement to a waiver of all claims.  The settlement reads:

> There are numerous contested issues in this claim, including but not limited to whether the alleged injury is covered under the Workers' Compensation Act, whether the plaintiff has established a compensable injury as defined by the Act, causation/work-relatedness of plaintiff's current condition, whether the plaintiff's claim is barred by failure to provide due and timely notice of her alleged injury, the extent and duration of plaintiff's disability (if any), whether the plaintiff retains the capacity to return to work, and the plaintiff's entitlement to past and future medical benefits.  Recognizing such issues exist, the potential exposure and liability for each party and/or this claim ultimately being dismissed, the plaintiff agrees to settlement based upon the settlement terms contained herein as such serves her best interest.

> In return for the defendant/employer's lump sum payment of $7,500.00, the plaintiff agrees to a full and complete dismissal of this pending claim and any other future claims, whether known or unknown, against the defendant/employer with prejudice.  The plaintiff further agrees to withdraw her claims as she has asserted against the defendant/employer.

> The plaintiff has reviewed the settlement terms contained herein and such terms have been fully and carefully explained to the plaintiff by her counsel.  The plaintiff attests to the Administrative Law Judge that she voluntarily enters into this Settlement Agreement by reason of the fact that the settlement terms

contained herein serve her best interest.

The parties agree that once this Settlement Agreement is approved by the Administrative Law Judge, the defendant/employer shall then provide the plaintiff with a $7,500.00 lump sum payment and, in return, the plaintiff agrees to a full and complete dismissal of her workers' compensation claim with prejudice.

The settlement agreement was signed by Matlock, her attorney, and Douglas Autotech's attorney. It was approved on August 29, 2008. Douglas Autotech now seeks summary judgment in the present case.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

6

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Defendant Douglas Autotech makes several arguments as to why the Court should grant summary judgment in this case. First, Defendant alleges that Plaintiff is barred from bringing this action because she agreed to the Workers' Compensation release which provides for "a full and complete dismissal of this pending claim and any other future claims, whether known or unknown." Next, Defendant argues that Plaintiff has failed to state a claim in her Complaint under which relief may be granted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant also argues that Plaintiff cannot sustain a claim for discrimination under the Americans with Disabilities Act ("ADA"), or the Age Discrimination in Employment Act ("ADEA"). Finally, Defendant argues that Plaintiff cannot make out a prima facie case of retaliation under Title VII, the ADA, or the ADEA. The Court addresses each of these issues below.

## I.    Workers' Compensation Release

Defendant first argues that summary judgment is appropriate because Plaintiff signed the Workers' Compensation release of all current and future claims. The present action was filed prior to the Workers' Compensation settlement, therefore Defendant argues that Plaintiff knowingly and willingly agreed to release this claim. Defendant asserts that this lawsuit falls under the settlement's "clear and unambiguous" language, and that Plaintiff had an attorney, which further ensures her full knowledge and understanding of what she agreed to in the settlement. Further, if the release was intended to exclude this lawsuit, it should have stated as

much.

Plaintiff argues that the settlement agreement addressed Plaintiff's Workers' Compensation claims, and is inapplicable to any discrimination claims.  Plaintiff reads the language of the settlement as addressing "injury and issues" covered under the Workers' Compensation Act and nothing more.  Further, Plaintiff asserts that to constitute waiver, there must be a clear and unambiguous intent, made knowingly and voluntarily.  Plaintiff asserts that there is no clear and unambiguous intent, except that Plaintiff intended to release claims for future medical benefits and other actions relating to her injury.  Finally, Plaintiff argues that she cannot prospectively waive her rights under Title VII, pursuant to Sixth Circuit and Supreme Court precedent.  *See Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995).

"Federal common law controls the validity of a release of a federal cause of action." *Nicklin v. Henderson*, 352 F.3d 1077, 1980 (6th Cir. 2003).  The Court looks to the intent of the parties in determining the scope of the release.  *Adams*, 67 F.3d at 585 ("Intent is determined by reviewing the language of the entire instrument and all surrounding facts and circumstances under which the parties acted in light of the applicable law as to employment discrimination at the time.").  In addition, a release must be made knowingly and voluntarily.  The Sixth Circuit looks to five factors:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Adams*, 67 F.3d at 583 (internal citations omitted).  A release may be set aside if the moving party can demonstrate that the settlement was invalid due to fraud or mutual mistake.  *Nicklin*,

352 F.3d at 1081.  Although employees may release ADEA and Title VII claims, "[i]t is the general rule . . . that an employee may not prospectively waive his or her rights . . . ." *Adams*, 67 F.3d at 584.  Not every reference to post-settlement conduct in a release is considered a "prospective waiver."  *Id.*

The Court first notes that this is not a case of prospective waiver.  The present lawsuit was filed on January 28, 2008.  The parties entered into a settlement agreement on August 18, 2008.  Therefore, this action was already pending for nearly seven months when Plaintiff signed the release.  Plaintiff's rights in regards to the present lawsuit were known to her at the time she signed the release.

The Court believes, however, that a genuine issue of material fact exists as to whether or not the release signed by Plaintiff was intended to include any discrimination claims.  The language of the release is ambiguous.  "A contract is considered ambiguous where the parties suggest different, yet reasonable interpretations."  *Sullivan v. Cap Gemini Ernst & Young, U.S.*, 518 F. Supp. 2d 983, 993 (N.D. Ohio 2007) (citing *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993)).  The first paragraph of the settlement agreement fails to discuss discrimination; instead, the language is focused solely on Plaintiff's injury, condition, and medical benefits.  At the same time, the language also states that Plaintiff "agrees to withdraw her claims as she has asserted," and there is no qualifying language limiting this to workers' compensation or medical benefits claims.  At the end of the release, Plaintiff agrees to dismissal of her workers' compensation claim in exchange for the lump sum payment.  While the release seems only to deal with the issues of injury and medical benefits, thus implying that "her claims" means all medical claims, the exact language is not specifically limited.  Both parties

9

have asserted reasonable interpretations for the language in the release.

The Court does not believe this case is comparable to other cases that have found unambiguous language in releases.  In *Sullivan*, the Court found that a release executed with the plaintiff's severance package unambiguously released her disability claims as well, since the language of the release stated, "[t]his Waiver includes, but is not limited to, any and all claims arising from, or in connection with, my employment . . . ."  518 F. Supp. 2d at 993.  Likewise, in *Seals v. General Motors Corp.*, the contract language unambiguously released all known and unknown claims "which [the plaintiff] may have related to [the plaintiff's] employment," thereby barring the plaintiff from bringing his intentional tort claim.  546 F.3d 766, 772 (6th Cir. 2008). Finally, the Sixth Circuit found that a release which stated "I hereby release . . . from any and all pending and future obligations and liabilities to me arising out of employment . . ." was clear and unambiguous, and prevented the plaintiffs who signed the release from bringing their claims under Section 301 of the Labor Management Relations Act.  *Akins v. Zeneca, Inc.*, 62 F.3d 1417 (table), 1995 WL 452087, *7 (6th Cir. 1995).  In contrast to these cases, there is no contract language in the present settlement agreement suggesting that plaintiff released all claims related to her employment.  In the context of the settlement agreement, the release could be read as releasing all claims or only claims relating to Plaintiff's injury and medical benefits.  Therefore, the Court believes that this issue is a question of fact best left to the jury.

## II.    Title VII of the Civil Rights Act of 1964

Plaintiff asserts claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq..  Under Title VII, it is "an unlawful employment practice for an employer . . .to discriminate against any individual with respect to his compensation,

10

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Defendant argues that Plaintiff has failed to meet her burden of proof under Title VII.  Plaintiff asserts she has presented enough evidence to survive a motion for summary judgment.

In a Title VII action, the burden is on the plaintiff to establish a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The plaintiff may prove his or her case through direct or circumstantial evidence of discrimination.  *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Henry v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 162 F. Supp. 2d 794, 799 (S.D. Ohio 2000).  No direct evidence of discrimination exists in the present case.  "In the absence of direct evidence . . . Title VII claims are subject to the familiar burden-shifting framework set forth in *McDonnell* . . . as subsequently modified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)."  *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 390 (6th Cir. 2009).  Under *McDonnell*, after the plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  411 U.S. at 802.  If the employer demonstrates such a reason, the burden shifts back to the plaintiff to show that the stated reason is in fact pretext for unlawful discrimination.  *Id.* at 804.  The burden of persuasion remains with the plaintiff at all times.  *Risch*, 581 F.3d at 391 (citing *Burdine*, 450 U.S. at 253).

To establish a prima facie case, the plaintiff must demonstrate "(1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected

11

class." *Talley*, 61 F.3d at 1246.  The fourth factor may also be satisfied by demonstrating that a similarly situated, non-protected employee received more favorable treatment.  *Id.*  An adverse employment decision is defined as " a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'"  *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Michigan Dept. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)).  The proof required for a prima facie case may differ from case to case, depending on the facts.  *Mills v. Ford Motor Co.*, 800 F.2d 635, 639 (6th Cir. 1986).  The plaintiff must at least establish an inference of discrimination.  *Id.* (citing *Burdine*, 450 U.S. at 253).

The Court can discern two adverse employment actions from Plaintiff's pleadings that may have involved race or sex discrimination.  The first action was denial of a position in the quality lab by Bill Doughman, which Plaintiff alleges was due to her race.  The second is the verbal altercation that occurred in May of 2007 between Plaintiff and Jason Wilkins, an African American male in his twenties, resulting in Plaintiff's suspension.  Plaintiff alleges she was treated differently than Mr. Wilkins due to her sex.

As to Plaintiff's racial discrimination claim in regards to the quality lab position, Plaintiff has failed to make out a prima facie case.  Although Plaintiff satisfies the first three factors, she has not demonstrated that a non-protected individual received the job, or that a non-protected, similarly situated employee was treated more favorably.  Further, Plaintiff has not produced any other evidence that would tend to demonstrate an inference of discrimination.  Therefore, Plaintiff has not met her burden, and our inquiry ends here.

Plaintiff's sex discrimination claim arguably meets the four factors necessary to make out a prima facie case of discrimination.  Wilkins was male, and, unlike Plaintiff, was not sent home

12

from work after the verbal altercation.  Therefore, the burden shifts to Defendant to show a legitimate, non-discriminatory reason for sending Plaintiff home, but not Wilkins.  The Court finds that Defendant has met this burden.  Defendant asserts that neither Plaintiff nor Wilkins were sent home during the investigation.  Although this may have been contrary to company policy, both parties were treated equally in this regard, and Plaintiff was not harmed by being allowed to remain at work while the investigation took place.  Plaintiff was sent home after the human resources manager determined through her investigation that Plaintiff was the instigator. Company policy dictates that the person at fault is given suspension time.  Therefore, Plaintiff was treated differently from Wilkins only after an investigation of the altercation, after which Defendant believed Plaintiff was the sole instigator.  The Court believes this is a legitimate, non-discriminatory reason for the differential treatment of Plaintiff and Wilkins.

If an employer is able to offer a legitimate, non-discriminatory reason for its actions, the burden of production shifts back to the plaintiff to show pretext.  "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Plaintiff may demonstrate pretext by other means as well, such as challenging the "reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Risch*, 581 F.3d at 391 (quoting *White*, 533 F.3d at 393 (internal citations omitted)).  In *Balmer v. HCA, Inc.*, 423 F.3d 606 (6th Cir. 2005), the Sixth Circuit outlined the following analysis for determining if an employer's proffered reason is pretextual:

13

> The plaintiff must produce sufficient evidence from which the jury could "reasonably reject [the defendants'] explanation" and infer that the defendants "intentionally discriminated" against her. Woythal v. Tex-Tenn Corp., 112 F.3d 243, 246-47 (6th Cir.1997). The plaintiff must submit evidence demonstrating that the employer did not " 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." Braithwaite v. Timken Co., 258 F.3d 488, 494 (6th Cir.2001) (citing Smith v. Chrysler, 155 F.3d 799, 806-07 (6th Cir.1998)). To inquire into the defendant's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. Smith, 155 F.3d at 807 ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

Id. at 614.  For instance, the Sixth Circuit found that no reasonable jury could find pretext where an investigation was conducted, witnesses were questioned, the employer reviewed the evidence, and the plaintiff did not produce any additional evidence upon which the jury could reasonably reject the employer's explanation.  Larocque v. City of Eastpointe, 245 Fed. Appx. 531, 537 (6th Cir. 2007).

Plaintiff has not provided sufficient evidence to demonstrate an inference of pretext. Plaintiff admits that a verbal altercation occurred on May 8, 2007, between Wilkins and herself. In addition, Plaintiff does not deny that she refused to write up her own statement about the incident, and instead signed a typed written statement, which was based on her account of the verbal altercation as told to the human resources manager.  Plaintiff alleges that the statement is not in the correct order, but admits she was given an opportunity to review it.   Plaintiff further alleges that the only reason she signed the statement was because she might be terminated if she did not sign it.  The Court notes that Plaintiff did not raise this issue until her most recent affidavit.  "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."  Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986).  In Plaintiff's May 5, 2009,

14

deposition, she stated that she verified the statement was true and accurate, although out of order, and she could possibly have made changes to the statement. Nowhere does Plaintiff allege that she might have been terminated had she not signed the statement. Although not directly contradictory, the fact that Plaintiff did not raise this issue until after the motion for summary judgment was filed is not supportive of Plaintiff's position.

Even assuming all Plaintiff's statements are true, including her allegation that she may have been terminated if she did not sign the statement, the Court does not believe that a reasonable jury would find that the Defendant's decision was not based in fact, the actual reason for suspension, or insufficient to justify Defendant's action. Defendant had a reasonable basis for suspending Plaintiff based on the company's investigation and policies. Believing Plaintiff was the instigator of the altercation, and not Wilkins, Plaintiff was sent home. It is company policy to deal with verbal altercations of this sort by sending employees home from work. Plaintiff has offered no evidence from which a reasonable jury could infer that her suspension was motivated by discrimination. Plaintiff does not deny that a verbal altercation occurred, or that the investigation was properly conducted. She willingly signed a statement as part of the investigation, although now she denies she was the instigator. Further, Plaintiff states in her affidavit that the possibility she would be terminated if she didn't sign the statement was based on her own belief of company policy, not on any specific threat or order from her supervisor or the human resources manager. The evidence Plaintiff has presented is not enough to show pretext. She cannot merely demonstrate that Defendant's agents punished the wrong person. She must show that the decision or investigation was unreasonable, or there was no basis for the Defendant to take the adverse employment action. The Court finds that Plaintiff has failed to

15

meet her burden, and her claim must fail.

### III.   Americans with Disabilities Act

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A prima facie case of disability discrimination requires that a plaintiff show: "(1) that he or she is an individual with a disability; (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability."  *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002)); *Williams v. London Utility Com'n*, 375 F.3d 424, 428 (6th Cir. 2004) (quoting *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)).  In order to satisfy the third factor, the plaintiff must prove that he or she suffered an adverse employment action.  *Talley*, 542 F.3d at 1105.  If the plaintiff is able to establish a prima facie case, the *McDonnell Douglas* burden-shifting analysis applies, so that the defendant must present a legitimate, non-discriminatory reason for its actions, which the plaintiff may refute by demonstrating pretext.  *Id.*

The Court notes that although Congress amended the ADA effective January 1, 2009, with the ADA Amendments Act of 2008, the amendments do not apply retroactively to conduct that occurred prior to the effective date.  *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565-67 (6th Cir. 2009).  Therefore, the Court analyzes the present case under the ADA standards prior to the amendments.  "Disability" under the ADA is defined as: "(A) a physical or

16

mental impairment that substantially limits one or more of the major life activities of such

individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment." 42 U.S.C. § 12102(2)(A)-(C) (2006).  The burden is on the plaintiff to prove that

he or she suffers from a disability.  *Milholland*, 569 F.3d at 567.

The United States Supreme Court has held that the term 'major life activities' "refers to

those activities that are of central importance to daily life."  *Toyota Motor Mfg., Kentucky, Inc. v.

Williams*, 534 U.S. 184, 197 (2002).  "Merely having an impairment does not make one disabled

for purposes of the ADA."  *Id*. at 195.   Further, the Court said, such "terms need to be

interpreted strictly to create a demanding standard for qualifying as disabled."  *Id*. at 197.

Individuals attempting to prove disability status cannot "merely submit evidence of a medical

diagnosis of an impairment.  Instead, the ADA requires those 'claiming the Act's protection . . .

to prove a disability by offering evidence that the extent of the limitation [caused by their

impairment] in terms of their own experience . . . is substantial.'" *Id.* at 198 (quoting *Albertson's,

Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).  An impairment on major life activities that is

short-term is not generally considered a disability.  *Novak v. MetroHealth Medical Center*, 503

F.3d 572, 582 (6th Cir. 2007).  Major life activities include "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

*Salim v. MGM Grand Detroit, L.L.C.*, 106 Fed. Appx. 454, 459 (6th Cir. 2004) (quoting 29

C.F.R. § 1630.2(i)).

Defendant argues that Plaintiff is not considered disabled under the ADA because

Plaintiff's back condition does not impair her ability to work, nor has the Plaintiff produced

evidence that her impairment is permanent or long-term.  In contrast, Plaintiff asserts that her

constant back pain interferes with her ability to work, as well as her ability to do housework. She states that she has to reach into the sink to wash dishes and this causes her great pain. When she does housework, she has to sit down periodically, and estimates she can stand for only about thirty to forty-five minutes. Plaintiff alleges she is unable to participate in activities or hobbies because of the constant pain. On the days Plaintiff was unable to work at Douglas Autotech, she sometimes went to work at the school as a substitute teacher's aide because the pain was not as excruciating at that job.

There is no question that Plaintiff has an impairment in that she suffers from severe back pain. The question, therefore, is whether that impairment "substantially limits one or more of the major life activities . . . ." 42 U.S.C. § 12102(2)(A). For non-work activities, Plaintiff must show that the impairment does more than "only moderately or intermittently prevent[ ] an individual from performing major life activities . . . ." *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir. 2002). For work activities, Plaintiff must demonstrate that she is "unable to work in a broad class of jobs or a broad range of jobs in various classes." *Salim*, 106 Fed. Appx. at 459 (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999) (internal quotation marks omitted). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I); *Morales v. BellSouth Telecommunications, Inc.*, 2009 WL 1322577, *7 (M.D. Tenn. 2009) (citing *Salim*, 106 Fed. Appx. at 459).

The Court believes that Plaintiff has not presented enough evidence to raise a genuine issue of material fact as to whether her impairment substantially limits any major non-work activities. A major life activity is considered substantially limited if the employee is:

18

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1630.2(j)(i), (ii). In *Mahon*, the Sixth Circuit found that the plaintiff had not shown his back impairment substantially limited major life activities because the evidence only demonstrated that it "causes him some distress and limits him in performing some activities, but . . . we cannot say he is severely restricted in any of them." 295 F.3d at 591. Mahon was still able to "perform household tasks, clean gutters, fix plumbing, walk a mile, and work on his car." *Id.* Likewise, in *Bryson v. Regis Corp.*, the Sixth Circuit ruled that a plaintiff who was able to stand for about fifteen minutes to two hours was not disabled. 498 F.3d 561, 576 (6th Cir. 2007). Although the plaintiff could not stand all day as she used to, she was not completely prevented from standing or walking. *Id.* Additional cases also demonstrate that the "substantially limited" standard is difficult to meet. *See, e.g.*, *Satterly v. Borden Chemical, Inc.*, 24 Fed. Appx. 471, 2001 WL 1587350, *1 (6th Cir. 2001) (plaintiff with chronic arthritic condition had difficulty walking and walked at a slower pace than others, but "failed to establish that his ability to walk is substantially impaired"); *Brazzell v. Gap, Inc.*, 2009 WL 1650814, *9 (M.D. Tenn. 2009) (slip copy) (plaintiff's ability to walk was not substantially limited because his back problems "only moderately or intermittently restricted his ability to walk").

Plaintiff has not alleged that her back pain prevents her from standing. She can still do household chores as long as she has periodic breaks during which to sit down. In addition, before she quit her job at Douglas Autotech, she was still able to work on some days. Plaintiff

also complains that her back pain is constant, but admits that it is more painful sometimes than others.  Based on the foregoing evidence, the Court believes that Plaintiff's back pain is intermittent and does not substantially limit Plaintiff's ability to stand or any other major life activities.

The Court also finds that Plaintiff has failed to demonstrate she is substantially limited in the major life activity of working.  The EEOC Regulations contemplate several factors to consider when determining if a plaintiff is unable to work in a "broad class of jobs:"

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).  Plaintiff has not presented any evidence to demonstrate that she is unable to work at any job other than the one she held with Douglas Autotech.  Although likely prevented from working in a similar class of jobs due to her impairment, there is evidence that a broad range of jobs in various classes may still be available to her.  For instance, Plaintiff testified that she would have been willing to work at a desk job at Douglas Autotech.  Defendant asserts that Plaintiff was qualified for at least one-third of the jobs that were posted during Plaintiff's employment.  Further, Plaintiff worked as a substitute teacher's aide while she was on FMLA leave from Douglas Autotech.  Plaintiff also states that she is currently seeking employment.  Therefore, the Court finds that Plaintiff has not presented sufficient evidence to

20

demonstrate that she is substantially limited in the major life activity of working.  Because

Plaintiff has failed to demonstrate she is substantially limited in any major life activity, she is not

deemed disabled within the confines to the ADA, and her claim must fail.

Even if Plaintiff were able to demonstrate she has a disability, she must still meet the

other two components of the prima facie case, namely that she was an otherwise qualified

employee, and that she was discriminated solely on the basis of her disability.  There is no issue

as to whether Plaintiff was an otherwise qualified employee.  The disagreement lies in the third

component.  Defendants argue that there is no evidence that disability discrimination played a

role in any adverse action taken against Plaintiff.  Plaintiff fails to respond to this argument in

her brief or affidavit, and there is certainly insufficient evidence that any adverse employment

action occurred *solely* because of her disability.  Plaintiff's only allegation of disability

discrimination is in her 2007 EEOC charge, which merely states: "I believe that I was suspended

. . . because of my disability, in violation of the Americans with Disabilities Act of 1990 . . . ."

Plaintiff must present more than mere speculation. Therefore, Plaintiff has failed to meet her

burden of proof under the summary judgment standard.

**IV.    Age Discrimination in Employment Act**

The ADEA provides that it "shall be unlawful for any employer– (1) to fail or refuse to

hire or to discharge any individual or otherwise discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's

age."  29 U.S.C. § 623(a)(1).  A prima facie case under the ADA is similar to that of Title VII.

Absent direct evidence, Plaintiff must establish: (1) she was at least forty years old; (2) she

suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly

21

situated, non-protected employees were treated more favorably.  *See Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Sokolnicki v. Cingular Wireless, LLC*, 331 Fed. Appx. 362, 366 (6th Cir. 2009).  If plaintiff can make out a prima facie case, ADEA claims follow the familiar *McDonnell Douglas* burden-shifting scheme.  *Id.*  The defendant employer must demonstrate a legitimate, non-discriminatory reason for the adverse employment action, and if successful, the plaintiff must demonstrate pretext.  *Id.*

Plaintiff has met her burden in establishing a prima facie case of age discrimination in regards to her May 8, 2007, suspension.  At the time, Plaintiff was forty years old.  She was suspended from work for engaging in a verbal altercation.  Moreover, she was qualified for her position.  Jason Wilkins was in his twenties and was not suspended even though he took part in the verbal altercation as well.  Defendant has also met its burden of providing a legitimate, non-discriminatory reason for the differential treatment.  As described in more detail above, Defendant conducted an investigation and concluded that Plaintiff was the instigator of the verbal altercation.  Therefore, Plaintiff was suspended while Wilkins was not.  The Court believes this reason is sufficient to meet Defendant's burden.

The same analysis for pretext applies as was previously laid out in the Title VII section of this memorandum.  Again, the Court believes that Plaintiff has failed to offer enough evidence that a reasonable jury could find that Defendant's decision to suspend her was pretextual.  Whether the employer's decision was simply mistaken or unsound is not a proper basis for demonstrating pretext.  *See Hein v. All America Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000) (citing *Brocklehurst v. PPG Industries, Inc.,* 123 F.3d 890, 898 (6th Cir. 1997)).  Therefore, Plaintiff's claim under the ADEA does not survive summary judgment.

V.      **Retaliation**

Under a Title VII retaliation claim, a plaintiff may prove his or her claim through direct or circumstantial evidence.  *Henry v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 162 F. Supp. 2d 794, 800 (S.D. Ohio 2000).  The Court finds no direct evidence of retaliation.  Absent direct evidence, the Court follows the *McDonnell Douglas* balancing test.  *Id.*; *McDonnell*, 411 U.S. at 802.  "[T]o establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  The causal connection must be proven by sufficient evidence to demonstrate an inference that, had the plaintiff not engaged in his protected rights, the defendant would not have taken the adverse action.  *Id.*  A retaliation claim under the ADA or ADEA uses the same analysis.  *Johnson v. Cleveland City School Dist.*, 2009 WL 2610833, *8 (6th Cir. 2009) (slip copy) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997)); *Abnet v. Unifab Corp.*, 2009 WL 232998, *5 (6th Cir. 2009).

Plaintiff has met the first three requirements of a prima facie case for retaliation.  She has established that she filed a charge with the EEOC, which is protected activity, prior to the adverse employment action.  Further, Defendant knew of the filing of the EEOC charge because Defendant participated in mediation with Plaintiff.  Plaintiff suffered an adverse employment action when she was suspended in May of 2007 without pay.  The issue, therefore, is whether there is a causal connection between Plaintiff's suspension and the filing of the EEOC charge.

23

Plaintiff filed her charge with the EEOC on December 16, 2006.  The parties completed mediation and reached a settlement agreement on March 13, 2007.  Matlock was suspended on May 8, 2007.  Plaintiff has not produced any other evidence linking the protected activity to her suspension.  The most the Court can discern from Plaintiff's brief and affidavit is that there was some "harassment" which "slacked up" between December 2006 and March 2007, but started again after the mediation.  Plaintiff never specifies who harassed her, what kind of harassment took place, or how frequently this harassment occurred.  Moreover, this harassment was never mentioned until Plaintiff filed her affidavit on October 12, 2009.

To establish causation, the burden is on Plaintiff to "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" filed a charge with the EEOC.  *Nguyen*, 229 F.3d at 563.  Temporal proximity between the protected activity and the adverse employment action is rarely, by itself, sufficient to establish this inference.  *See Johnson*, 2009 WL 2610833, at *8.  "[W]here some time elapses between when the employer learns of the protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct . . . ."  *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Five months passed between the time Defendant first learned of Plaintiff's protected activity and Plaintiff's suspension.  A two month time interval occurred between the settlement agreement and Plaintiff's suspension.  Looking at either time period, the Court does not believe that, even if temporal proximity exists, it is enough on its own to establish causation.  Cases finding temporal proximity, standing alone, sufficient to establish causation address acute time periods, where the employee would not have had time to produce any other evidence of

24

retaliation.  *See, e.g.*, *id.* (plaintiff was laid off on the same day the company owner became aware of his protected activity); *McNett v. Hardin Cmty. Fed. Credit Union*, 118 Fed. Appx. 960, 965 (6th Cir. 2004) (employee terminated thirteen days after protected activity); *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (passage of twenty-two days was sufficient to infer causation).  This is not the case here.  Plaintiff filed her charge five months before any adverse action was taken.  Surely if Defendant's action in May of 2007 was motivated by retaliation, five months is a long enough time period for Plaintiff to be able to couple her claim of temporal proximity with some other evidence.  Because Plaintiff has not produced any additional evidence, Plaintiff has failed to make out a prima facie claim for retaliation.

Even assuming, *arguendo*, that Plaintiff had established a prima facie case for retaliation, her claim would still fail because Defendant can offer a legitimate, non-discriminatory reason for the adverse employment action.  As outlined above, Defendant conducted an investigation and believed Plaintiff was the instigator of the verbal altercation.  Plaintiff, on the other hand, cannot establish pretext.  The analysis for pretext is the same as discussed earlier.  Plaintiff has not demonstrated any evidence that Defendant's decision was not based in fact or the real reason for her suspension.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

An appropriate order shall issue.

25